AO 106A  (08/18)  Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT

for the

Southern District of Ohio

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br>**CELLULAR DEVICES MORE FULLY DESCRIBED IN<br>ATTACHMENT A** | )<br>)<br>)<br>)<br>)    Case No. **1:22-MJ-00175** |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

**See Attachment A.**

located in the _____**Southern**_____ District of _____**Ohio**_____ , there is now concealed *(identify the person or describe the property to be seized)*:

**See Attachment B.**

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | | Offense Description |
|---|---|---|
| 21 U.S.C. § 846 | **Narcotics Conspiracy** | |

The application is based on these facts:

**See attached affidavit**

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

**Brett Stratmann, ATF TFO**
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
_____**FaceTime**_____ *(specify reliable electronic means)*.

Date: _____**Mar 21, 2022**_____

City and state: **Cincinnati, Ohio**

_____
*Judge's signature*

**Hon. Stephanie K. Bowman, U.S. Magistrate Judge**
*Printed name and title*

## ATTACHMENT A

The property to be searched is:

    a. An iPhone cellular device with a red and black case held as ATF Property #16 located at ATF Cincinnati Field Office;

    b. A white and silver iPhone held as ATF Property #17 located at ATF Cincinnati Field Office;

    c. A red and black iPhone in a green case held as ATF Property #18 located at ATF Cincinnati Field Office;

    d. A black iPhone in a clear case held as ATF Property #19 located at ATF Cincinnati Field Office;

    e. A white and rose iPhone held as ATF Property #21 located at ATF Cincinnati Field Office;

all are currently held in the evidence locker at the ATF Cincinnati Field Office, located at 550 Main Street, Cincinnati Ohio 45202.

This warrant authorizes the forensic examination of the Devices for the purpose of identifying the electronically stored information described in Attachment B.

1

## ATTACHMENT B

1. All records on the TARGET CELL PHONES described in Attachment A that relate to violations of 21 U.S.C. § 846 and involve Armanunnie COSTON and other yet known and unknown individuals including:

   a. Evidence that shows the TARGET CELL PHONES were used to further facilitate the distribution of illegal narcotics; lists of customers and related identifying information; types, amounts, and prices of drugs trafficked as well as dates, places, and amounts of specific transactions;

   b. any information related to sources of drugs (including names, addresses, phone numbers, or any other identifying information);

   c. any information recording schedules or travel;

   d. any and all stored telephone numbers;

   e. any and all text messages, to include incoming, outgoing, saved, deleted, and drafts;

   f. Any and all emails, sent, received, delete, draft and/or saved;

   g. any and all voicemails;

   h. any and all photographs, electronic images, video recordings, and/or images saved and/or deleted on the cellular device;

   i. Any and all data retrieved from Apps on the device;

   j. any and all entries made in a calendar and/or notebook feature;

   k. any and all personal numbers associated with the cellular device to include the telephone number, push-to-talk number, make, model, carrier, ESN, IMEI, ICCID, MEID, SEID, and or IMSI.

2. Evidence of user attribution showing who used or owned the TARGET CELL PHONES

1

at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.

As used above, the terms "records" and "information" include all the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

2

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF | |
| A IPHONE CELLULAR DEVICE WITH A RED AND BLACK CASE HELD AS ATF PROPERTY #16 | |
| A WHITE AND SILVER IPHONE HELD AS ATF PROPERTY #17 | |
| A RED AND BLACK IPHONE IN A GREEN CASE HELD AS ATF PROPERTY #18 | Case No. __1:22-MJ-00175__ |
| A BLACK IPHONE IN A CLEAR CASE HELD AS ATF PROPERTY #19 | **Filed Under Seal** |
| A WHITE AND ROSE IPHONE HELD AS ATF PROPERTY #21 | |
| CURRENTLY LOCATED AT ATF CINCINNATI FIELD OFFICE, LOCATED AT 550 MAIN STREET, CINCINNATI OHIO 45202 | |

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A SEARCH WARRANT**

I, Brett Stratmann, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1. I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 and 18 U.S.C. §§ 2703(c)(1)(A) for a search warrant authorizing the examination of property—electronic devices—which are currently in law enforcement possession, and the extraction from that property of electronically stored information described in Attachment B. The TARGET CELL PHONES are described herein and in Attachment A, and the information to be seized is described herein and in Attachment B.

.    1

2. I am a Task Force Officer (TFO) with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) assigned to the Organized Crime Investigative Squad of the Intelligence Unit of the Cincinnati Police Department (CPD) since 2014. I have been a police officer with the CPD for more than 25 years. I have conducted and participated in numerous drug trafficking investigations, illegal use of firearm investigations that were related to murders and felonious assaults, and money laundering investigations during my career, which have resulted in the drug and gun seizures, seizures of large amounts of drug proceeds in the form of U.S. currency, arrests of suspects, their prosecution, and conviction. I have participated in numerous interviews of individuals involved in the distribution, transportation, and sales of controlled substances, which included discussions regarding how those organizations operate. Because of this experience, I am familiar with the day-to-day operations of distributors and transporters of controlled substances. I am aware that drug traffickers often communicate with their customers, couriers, and/or associates with cellular telephones, or use of multiple telephones or other devices, to avoid detection by law enforcement. I am aware that individuals involved in the illicit distribution of controlled substances nearly always tend to conceal their identities as well as the locations where they live and where drug transactions take place. These individuals are also known to have vehicles, properties, businesses, utilities, and other purchases in the names of other people to conceal their financial transactions and any other association with their drug trafficking activity. Based on my training and experience, I know that drug dealers will often acquire assets and register these assets (including but not limited to cell phones, mobile devices, and/or vehicles) in fictitious names or the names of associates to disguise their ownership. I have also participated in numerous interviews of individuals involved in the illegal possession of firearms. I have participated in the investigation of the offenses referred to above and have reviewed ATF reports and reports prepared

2

by other law enforcement agencies. I have also been involved with the analysis of pen registers, the monitoring of Title III wire intercepts, and the installation and monitoring of tracking devices for vehicles in relation to narcotics investigations. Further, I have been the affiant and obtained numerous Federal warrants for the cell phone data location of fugitives and subjects under investigation by the ATF and the Cincinnati Police Department. I have testified as an expert regarding the drug distribution of drug traffickers in federal District Court in the Southern District of Ohio and the Hamilton County Court of Common Pleas Court, State of Ohio.

3. In my experiences I have had the opportunity to monitor, listen, and review transcripts pertaining to communications which involved the trafficking of illegal narcotics by persons who attempted to thwart law enforcement by speaking in some sort of coded language. I have also participated in numerous post arrest and proffer interviews of individuals with knowledge of illegal drug trafficking that had been involved in using coded language and were familiar with day-to-day operations utilized by those involved in the illegal trafficking of narcotics. Through these interviews and other investigative experiences, I have gained knowledge regarding the various methods, techniques, codes, and/or jargon utilized by illegal drug traffickers in the course of conducting their criminal activities.

4. In addition, I have utilized confidential informants, pen registers, toll records, physical surveillances, and electronic surveillances in the process of my investigations to further my knowledge regarding the operations of those involved in illegal narcotics distribution. I have further been the affiant on Federal search warrants, have testified in Grand Jury proceedings, and have written reports during the course of conducting investigations.

5. Through my training, experiences, and communications with other experienced agents and officers who conduct drug investigations, I have become familiar with methods used by drug

3

traffickers to import, transport, store, collect, and safeguard illegal narcotics. Additionally, my training and experiences have given me knowledge regarding the methods used by drug traffickers to communicate with each other, to launder drug proceeds, and to thwart efforts by law enforcement to detect their illegal activities. I also have gained intelligence through my experiences, and through conversations with others who have conducted drug-related investigations, regarding methods by which drug traffickers' package, prepare, and distribute narcotics.

6. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all my knowledge about this matter.

7. Based on the facts set forth in this affidavit, there is probable cause to believe Armanunnie COSTON committed violations of 21 U.S.C. § 846. There is also probable cause to believe that the cellular devices described in Attachment A will contain evidence of COSTON's crimes and the information described in Attachment B will assist law enforcement in identifying other conspirators and crimes committed by Armanunnie COSTON and the MILLER Drug Trafficking Organization (MILLER DTO).

8. The court has jurisdiction to issue the proposed warrant because it is a "court of competent jurisdiction" as defined in 18 U.S.C. § 2711. Specifically, the Court is a district court of the United States that has jurisdiction over the offense being investigated, *see* 18 U.S.C. § 2711(3)(A)(i).

## IDENTIFICATION OF THE DEVICES TO BE EXAMINED

9. The property to be searched is as follows (collectively the TARGET CELL PHONES), further described in Attachment A:

   a. An iPhone cellular device with a red and black case held as ATF Property #16 located at ATF Cincinnati Field Office. This phone was recovered from the living room at 1935 Windmill Way, Cincinnati, Ohio 45240 on January 31, 2022.

   b. A white and silver iPhone held as ATF Property #17 located at ATF Cincinnati Field Office. This phone was recovered from the living room at 1935 Windmill Way, Cincinnati, Ohio 45240 on January 31, 2022.

   c. A red and black iPhone in a green case held as ATF Property #18 located at ATF Cincinnati Field Office. This phone was recovered from the bedroom at 1935 Windmill Way, Cincinnati, Ohio 45240 on January 31, 2022.

   d. A black iPhone in a clear case held as ATF Property #19 located at ATF Cincinnati Field Office. This phone was recovered from the bedroom at 1935 Windmill Way, Cincinnati, Ohio 45240 on January 31, 2022.

   e. A white and rose iPhone held as ATF Property #21 located at ATF Cincinnati Field Office. This phone was recovered from a gray Nissan Rogue bearing Ohio passenger plate JCC6925 at 2158 Seven Hills Drive, Cincinnati, Ohio 45240 on January 31, 2022.

10. The TARGET CELL PHONES are currently being held at the ATF Cincinnati Field Office, located at 550 Main Street, Cincinnati Ohio 45202. The applied warrant would authorize the forensic examination of the TARGET CELL PHONES for the purpose of identifying electronically stored data, particularly described in Attachment B.

**PROBABLE CAUSE**

11. In or around the summer of 2021, the Cincinnati Police Department (CPD) learned, through multiple sources of information, that Michael MILLER and other co-conspirators were working together to distribute fentanyl in the Cincinnati, Ohio area. ATF Cincinnati began jointly investigating the Michael MILLER Drug Trafficking Organization (MILLER DTO) in the fall of 2021 with the Cincinnati Police Department. On January 26, 2022, United States Magistrate Judge Stephanie K. Bowman signed arrest warrants for five members of the MILLER DTO including Armanunnie COSTON. COSTON was charged, in a Superseding Indictment, with a violation of 21 U.S.C. § 846 (Conspiracy to Possess with Intent to Distribute and Distribute Controlled Substances) in Southern District of Ohio Case Number 1:21-CR-122. COSTON was arrested on January 31, 2022. I learned from other law enforcement officers that COSTON, prior to January 31, 2022, COSTON continued to sell drugs to the MILLER DTO customers and told customers who had previously contacted the DTO's "lick"/drug phone to contact COSTON directly. The MILLER DTO's "lick"/drug phone was a common phone shared by the co-conspirators in which drug customers called to purchase drugs. Investigation showed that the co-conspirators took turns answering the "lick"/drug phone to supply drug customers throughout the day and night. A confidential and reliable informant[1] (CI) familiar with the MILLER DTO told law enforcement on January 25, 2022, that COSTON was driving a gray Nissan Rogue bearing Ohio passenger plate JCC6925 and using at least one of the TARGET CELL PHONES to sell drugs to customers. As explained in more detail below, during the MILLER DTO investigation, agents determined that COSTON was using multiple cell phones to continue trafficking activities

---

[1] The CI has provided information regarding drug-related offenses to law enforcement in the recent past that has proven reliable. The CI has been convicted of theft and drug possession offenses. The information provided by the confidential informant was independently corroborated through further investigation.

by contacting customers and advising them to contact new numbers to purchase drugs from him which I believe are the TARGET CELL PHONES.

12. During the investigation of the MILLER DTO law enforcement executed multiple search warrants related to the drug trafficking activities of Michael MILLER, Markita STONE (Michael MILLER's girlfriend), Zion MILLER, Armaunnie COSTON, Andre HOUSTON, and additional co-conspirators. On October 8, 2021, District Five Violent Crime Squad and the Cincinnati SWAT team executed a search warrant at 880 Lafayette Avenue #17 Cincinnati, Ohio, a location the MILLER DTO was using to sell drugs. Officers also searched multiple vehicles associated with that address. Michael MILLER was taken into police custody. During the search, officers recovered four semi-automatic handguns (Ruger LCP .380 serial number 371323858, SCCY CPX-2 9mm serial number C100358, SCCY CPX-2 9mm serial number 661780, and a Master-Piece Arms MPA Defender 9mm serial number FX01562) from Michael MILLER's bedroom. Officers also recovered multiple distribution quantities of various illegal drugs including methamphetamine and fentanyl, multiple blenders, and items used to prepare and package drugs. Following Michael MILLER's arrest, District Five VCS officers began to monitor recorded jail calls made by Michael MILLER from the Hamilton County Justice Center. On recorded jail calls, officers heard Michael MILLER direct his brother, Zion MILLER, to keep the phone number used by his drug customers up and running. Michael MILLER also directed Zion MILLER to work the drug phone in the morning hours and have "Monnie" (identified as COSTON) work the phone in evening to effectively continue Michael MILLER's drug trafficking operations from jail. Officers also identified Markita STONE on recorded jail calls and learned that STONE was communicating with Michael MILLER and assisting him with the on-going conspiracy to distribute drugs.

7

13. On October 25, 2021, COSTON was arrested by Cincinnati Police and his two phones were seized along with four additional phones associated with the MILLER DTO. Search warrants were executed on the devices. I learned from the results of the search warrants that one of the two phones recovered from COSTON after the pursuit was 513-212-5897.[2] I examined the phone download for that device and discovered chats and texts in which COSTON was communicating about selling drugs. He also had photographs of suspected fentanyl and firearms stored in the cell phone. I learned the second phone recovered from COSTON after the pursuit was using phone number 513-328-0831 and the phone contained chats discussing the purchase of firearms. There were also chats and messages advising subjects to meet at the DTO's trafficking locations and messages related to drug sales. Therefore, I believe that COSTON uses cellular devices in furtherance of his drug trafficking activities. After the phones were seized by law enforcement on October 25, 2021, Michael MILLER instructed other co-conspirators to purchase new devices and port[3] the same numbers known to co-conspirators and drug customers. Based on the review of jail calls and subsequent investigation, I learned that the DTO did port the same phone numbers to new phones because phones recovered in later search warrants were using the same phone numbers as previously seized phones.

14. On December 8, 2021, officers from the District Three Violent Crimes Squad executed a search warrant at 2383 Williamsburg Drive with the assistance of the Cincinnati Police SWAT Team. Inside of the apartment, officers recovered approximately 82 grams of fentanyl, 73 grams of methamphetamine, and 10 grams of crack cocaine. Officers also found evidence of drug trafficking such as blenders, digital scales, baggies, "cut" used to mix with the drugs, and several cell phones. Officers recovered a Glock model 17, 9mm serial number BKUE976 loaded with

---

[2] COSTON used this same phone number for one of the TARGET CELL PHONES
[3] "Port" applying an existing cell phone number to a new phone hand held device.

8

seventeen rounds and a stolen Glock model 21, .45 serial number SDG871 with fourteen rounds. Both semiautomatic handguns were found in the kitchen near the recovered drugs and drug trafficking paraphernalia. Officers also learned from jail calls that COSTON had arrived at 2383 Williamsburg Drive as the SWAT team was on scene and COSTON left the area. Michael MILLER called COSTON from jail and told him to get the new phones from STONE. STONE confirmed with Michael MILLER that she has purchased the new phones ("lick"/phone 513-652-8303 and Zion MILLER's phone 513-773-6692) from Tina's Carryout store located in Over the Rhine. In a recorded call, STONE also contacted Arik SMITH on an additional line while on the phone with Michael MILLER. During this call, MILLER asked Arik SMITH if he can handle the phones and SMITH said that he can. Markita STONE delivered the new phones with the "lick phone" numbers re-ported to the new devices. STONE and Michael MILLER discussed talking on a different phone to avoid detection of law enforcement who maybe monitoring jail calls.

15. On January 31, 2022, ATF Cincinnati executed federal search warrants and arrest warrants for Arik SMITH and Markita STONE. I learned during post arrest interviews that the phones used by the MILLER DTO were given to Arik SMITH for a short period of time. STONE and SMITH admitted that the phones used to sell narcotics were taken from SMITH because he was not making enough money from drug sales. STONE stated that COSTON was given access to the phones to continue trafficking drugs for the DTO. STONE advised that on January 31, 2022, COSTON had possession of some of the phones but was also giving customers phone numbers to his own personal phones in an effort to sell narcotics on his own outside the control of the MILLER DTO. STONE also said that Andre HOUSTON and COSTON would be together.

16. Agents and police located COSTON's gray Nissan Rogue bearing Ohio passenger plate JCC6925 parked at 1935 Windmill Way Cincinnati, Ohio on January 31, 2022. Agents

9

obtained a federal search warrant for location information for COSTON's cell phone using the phone number 513-212-5897, which confirmed the device was present at 1935 Windmill Way. ATF TFO Brian Williams saw a male subject exit the residence and enter the driver's seat of the gray Nissan Rogue bearing Ohio passenger plate JCC6925. TFO Williams was unable to confirm the identity of the male subject because the vehicle's windows were tinted. A marked police unit conducted a traffic stop on the vehicle and detained the driver and identified him/her (hereinafter "Individual 1"). Individual 1 was wanted on a domestic violence warrant and outstanding capias. The traffic stop occurred at 2158 Seven Hills Drive, Cincinnati, Ohio. Individual 1 possessed a blue Android cell phone and a cracked red iPhone, which was found in the front seat area. An additional white and rose colored iPhone (ATF Property #21) was found in car. Responding agents and officers surrounded 1935 Windmill Way and ordered COSTON and the occupants to exit the residence. COSTON and Andre HOUSTON exited the residence. COSTON was placed into custody. I spoke to Individual 1, who stated that COSTON was his/her brother and had been using the gray Nissan Rogue bearing Ohio passenger plate JCC6925 earlier in the day and had just recently arrived at 1935 Windmill Way. Individual 1 said 1935 Windmill Way was his/her residence and consented to a search of the residence at 1935 Windmill Way.

17. During the execution of the consent search, agents and officers found two phones in the living room and two cell phones in the bedroom. The cell phones recovered in the living room were an iPhone in a red and black case (ATF Property #16) and a white and silver iPhone (ATF Property #17). The cell phones in the bedroom were a red and black iPhone in a green case (ATF Property # 18) and a black iPhone in a clear case (ATF Property #19). After COSTON was placed into custody, he advised Officer Johnson that he left his cell phone in the residence which was in a green case.

10

18. I reviewed a cellbrite download from Markita STONE's cell phone. During my review, I read a conversation between STONE and COSTON's phone number (513-212-5897) on January 29, 2022. STONE asked COSTON if he wanted the "lick"/drug phone and COSTON replied that he did. COSTON asked if the person who had the phone at the time (later identified through investigation as Arik SMITH) had dropped off the phone. STONE replied that she was going to take the phone. The conversation continued with STONE and COSTON complained that SMITH was not keeping up with the demand from the drug customers. This conversation corroborated what I learned during the post arrest interviews of Arik SMITH and STONE, in which SMITH told me that he had been given the "lick"/drug phone to continue selling drugs for the MILLER DTO after the search warrant executed on December 8, 2021 at 2383 Williamsburg Drive, Cincinnati, Ohio. SMITH stated that he was not a good drug dealer and MILLER DTO took the phone from him. In her interview, STONE explained to me that MILLER was not happy with SMITH's performance in dealing drugs and instructed STONE to take the phone from him to give to COSTON to sell drugs to the customers. STONE stated that COSTON then began to give drug customers he contacted on the MILLER DTO "lick"/dope phone his own numbers from his phones to steal customers from the MILLER DTO. Therefore, I believe that COSTON possessed the MILLER DTO's "lick"/drug phone on January 31, 2022 when he was arrested.

19. On February 15, 2022, I contacted Individual 1 by phone. Individual 1 stated that when he was stopped, s/he was in possession of a blue Android phone and an old red iPhone that was cracked. Individual 1 had no knowledge of the white and rose iPhone (ATF Property #21) that was also recovered from the gray Nissan Rogue bearing Ohio passenger plate JCC6925 he was driving. Therefore, I believe that COSTON was also using the white and rose iPhone because Individual 1 previously said that COSTON was driving the vehicle.

11

20. Based on the above, I believe there is probable cause that COSTON was the user of the TARGET CELL PHONES. I further believe he used the TARGET CELL PHONES in furtherance of his drug trafficking. My belief is based on my training and experience and information learned in this investigation to include the following: my knowledge that drug dealers commonly use multiple phones; my review of correspondence between COSTON and STONE from STONE's phone download where COSTON agreed to take possession of lick phone; STONE SMITH's post-arrest interview statements that the DTO's "lick"/drug phone was transferred to COSTON; Individual 1's statements that COSTON was routinely driving the car and that Individual 1 did not possess the rose colored phone; and the fact that investigation showed that COSTON was using multiple phones. Based on my training and experience I know traffickers use multiple phones to contact customers and sources of supply to facilitate their criminal activities. I believe COSTON was using the TARGET CELL PHONES recovered on January 31, 2022 to obtain and sell narcotics in Cincinnati Ohio. Therefore, I believe that the TARGET CELL PHONES will contain evidence of violations of 21 U.S.C. § 846 committed by COSTON and others.

21. The TARGET CELL PHONES are currently in the lawful possession of the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) and are currently in storage at the ATF Cincinnati Field Office. Located at 550 Main Street, Cincinnati Ohio 45202. In my training and experience, I know that the TARGET CELL PHONES have been stored in a way its contents are, to the extent material to this investigation, in substantially the same state as they were when the device first came in the possession of the ATF.

## TECHNICAL TERMS

22. Based on my training and experience, I use the following technical terms to convey the following meanings:

12

a. Wireless telephone: A wireless telephone (or mobile telephone, or cellular telephone or cell phone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

b. Digital camera: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic films. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

c. Portable media player: A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

d. PDA: A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments, or notes) and utilizing computer programs. Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail. PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can store any digital data. Most PDAs run computer software, giving them many of the same capabilities as personal computers. For example, PDA users can work with word-processing documents, spreadsheets, and presentations. PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

e. GPS: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records the locations where it has been. Some

GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

f.  Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

23. Based on my training, experience, and research, and from consulting the manufacturer's advertisements and product technical specifications available online at, https://www.apple.com/, know that the device has capabilities that allow it to serve as a cell phone, digital camera, portable media player, GPS navigation device, and PDA. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

15

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

24. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period on the device. This information can sometimes be recovered with forensics tools.

25. *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Device was used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the Device because:

  a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

  b. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

  c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

  d. The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team

16

and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

26. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the device consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

27. *Manner of execution.* Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

//

//

//

//

//

//

//

17

28. Based upon the aforementioned facts and circumstances, I believe that there is probable cause to believe that evidence of a crime, namely, violations of the statutes outlined in Attachment B, exists, and can be found in information contained in the TARGET CELL PHONES.

Respectfully submitted,

BRETT STRATMANN
Task Force Officer (TFO)
Bureau of Alcohol, Tobacco, Firearms and Explosives

Subscribed and sworn to before me on March ___21__, 2022.
**via electronic means, specifically Facetime video.**

HON. STEPHANIE K. BOWMAN
UNITED STATES MAGISTRATE JUDGE

18

## ATTACHMENT A

The property to be searched is:

      a.  An iPhone cellular device with a red and black case held as ATF Property #16 located at ATF Cincinnati Field Office;

      b.  A white and silver iPhone held as ATF Property #17 located at ATF Cincinnati Field Office;

      c.  A red and black iPhone in a green case held as ATF Property #18 located at ATF Cincinnati Field Office;

      d.  A black iPhone in a clear case held as ATF Property #19 located at ATF Cincinnati Field Office;

      e.  A white and rose iPhone held as ATF Property #21 located at ATF Cincinnati Field Office;

all are currently held in the evidence locker at the ATF Cincinnati Field Office, located at 550 Main Street, Cincinnati Ohio 45202.

This warrant authorizes the forensic examination of the Devices for the purpose of identifying the electronically stored information described in Attachment B.

1

## ATTACHMENT B

1.  All records on the TARGET CELL PHONES described in Attachment A that relate to violations of 21 U.S.C. § 846 and involve Armanunnie COSTON and other yet known and unknown individuals including:

    a.  Evidence that shows the TARGET CELL PHONES were used to further facilitate the distribution of illegal narcotics; lists of customers and related identifying information; types, amounts, and prices of drugs trafficked as well as dates, places, and amounts of specific transactions;

    b.  any information related to sources of drugs (including names, addresses, phone numbers, or any other identifying information);

    c.  any information recording schedules or travel;

    d.  any and all stored telephone numbers;

    e.  any and all text messages, to include incoming, outgoing, saved, deleted, and drafts;

    f.  Any and all emails, sent, received, delete, draft and/or saved;

    g.  any and all voicemails;

    h.  any and all photographs, electronic images, video recordings, and/or images saved and/or deleted on the cellular device;

    i.  Any and all data retrieved from Apps on the device;

    j.  any and all entries made in a calendar and/or notebook feature;

    k.  any and all personal numbers associated with the cellular device to include the telephone number, push-to-talk number, make, model, carrier, ESN, IMEI, ICCID, MEID, SEID, and or IMSI.

2.  Evidence of user attribution showing who used or owned the TARGET CELL PHONES

at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.

As used above, the terms "records" and "information" include all the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

2